

**FILED & ENTERED**

**MAR 01 2018**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** bakchell **DEPUTY CLERK**

<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re:

Kirstin A Tidwell

                Debtor.

Case No. 2:17-bk-20802 RK

Chapter 7

**SUPPLEMENTAL STATEMENT OF DECISION ON TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY**

Date:       February 27, 2018
Time:       3:00 p.m.
Courtroom:  1675

      By separate order being filed and entered concurrently herewith, the court grants the motion of Heide Kurtz, Chapter 7 Trustee, pursuant to Federal Rule of Bankruptcy Procedure 9019 to approve compromise of controversy with Glenn Tidwell regarding the pending marital dissolution action filed by Debtor Kirstin A. Tidwell pending in the Superior Court of California for the County of Los Angeles.  The compromise provides in pertinent part that Glenn Tidwell will pay the trustee $125,000 for Debtor's right, title and interest in assets described in the martial dissolution action and that the parties will release each other from all claims arising out of the bankruptcy case.  Debtor opposed the compromise.  The court heard from the parties at the hearing on the compromise on

February 27, 2018, and after considering the evidence on the motion and supplemental information provided at the hearing, the court determines that the compromise is fair, equitable and adequate and should be approved.  *See In re A & C Properties,* 784 F.2d 1377, 1380-1381 (9th Cir. 1986).

By this separate statement of decision, the court will set forth its analysis for determining that the compromise is fair, equitable and adequate and granting the motion.  In considering the proposed compromise, the court considered the assets involved in the compromise: (1) the Phelan property; (2) the South Street property; (3) the Pepperwood property; (4) retirement accounts; and (5) miscellaneous assets.

(1) Phelan property

The Phelan property is real property that was originally separate property of Glenn Tidwell, and by quitclaim deed on April 18, 2002, he transferred it from him as separate property to the family trust of him and Debtor as community property, and shortly thereafter, on June 28, 2002, the trust by Debtor and Glenn Tidwell as trustees transferred the property as community property back to Glenn Tidwell as his separate property.  The property was transmuted from separate to community property and then back to separate property by deeds signed by the parties.  California Family Code, § 852(a); *Estate of Bibb,* 67 Cal.App.4th 461 (2001); 2 Hogoboom and King, *California Practice Guide: Family Law,* ¶ 8:484 at 8-192 – 8-193 (2017).  The Phelan property is separate property of Glenn Tidwell, and Debtor's interest in this asset is $-0-.  Debtor has not shown any community property contribution to acquisition of Phelan property during the limited time it was community property between April 18, 2002 and June 28, 2002 that would require reimbursement of any community property contribution to the acquisition of this separate property asset.  Therefore, the court determines that Debtor has no value in this asset.

(2) South Street property

The one-third interest in the South Street property, which is about one-half acre

of industrial real estate in the northern part of the City of Long Beach, California, was originally separate property of Glenn Tidwell, and during marriage (the exact date is not in the record), he transferred it from him as separate property to the family trust of him and Debtor as community property, and shortly thereafter, on February 19, 2013, the trust by Debtor and Glenn Tidwell as trustees sold one-third interest in the property as community property to a third party, Gregory B. Randle, in exchange for a note secured by deed of trust of $415,000 at 7% interest per annum (one-third interest is $138,333) . Debtor does not dispute these facts.  The deed transferring the property by him to the community is a transmutation under California Family Code, § 852(a). *Estate of Bibb,* 67 Cal.App.4th 461 (2001); 2 Hogoboom and King, *California Practice Guide: Family Law,* ¶ 8:484 at 8-192 – 8-193.  The one-third interest in the note and trust deed is community property, but Glenn Tidwell is entitled to reimbursement of his separate property contributions to this asset under California Family Code, § 2640.  There is no evidence that Glenn Tidwell expressly waived any right to reimbursement of his separate property contributions.  *Marriage of Carpenter,* 100 Cal.App.4th 424 (2002); 2 Hogoboom and King, *California Practice Guide: Family Law,* ¶ 8:448 at 8-163 – 8-164.  Thus, Glenn Tidwell is entitled to reimbursement of the value of the property at the time of the transfer as separate property, but the appreciation belongs to the community.   2 Hogoboom and King, *California Practice Guide: Family Law,* ¶ 8:466 at 8-176 – 8-177. However, in its tentative ruling issued before the hearing, the court stated that there was not enough information for the court to value the respective interests of the parties because the value of the interest at the time of the transfer to the community and the amount of paydown of principal on the note are not facts in the record.

At the hearing, Glenn Tidwell stated that the property was worth $200,000 at the time he transferred his one-third interest in the property to the family trust in 2002, and the trustee made an offer of proof that her real estate broker had provided a valuation opinion of $200,000 for the property at the time of the transfer in 2002.  Counsel for Debtor stated that Debtor did not agree with this valuation, but provided no evidence or

specific information to rebut this valuation.  Counsel for the trustee stated that the trustee would file a declaration of the broker setting forth his valuation opinion and analysis of $200,000, which was filed on February 28, 2018 as Docket Number 51.  The valuation opinions of Glenn Tidwell as the owner of the property and the trustee's broker, W. Darrow Fiedler, a licensed real estate broker with the firm of Keller Williams Realty & KW Commercial, are admissible evidence of valuation under Federal Rules of Evidence 701 and 702 and reasonably support the values relied upon the trustee for the compromise.  The property was later sold to a third party in exchange for a promissory note in the amount of $415,000.  This fact is not disputed.  Based on these figures, the property was worth $200,000 at the time of the transfer of his one-third interest by Glenn Tidwell as his separate property, which can be valued at $66,666, and sold for $415,000, and the one-third interest of the trust as community property can be valued at $138,333.  Thus, the separate property contribution of Glenn Tidwell was $66,666, and the post-transfer appreciation of the interest was $71,667 ($138,333 minus $66,666).  The apportionment of the value of the note as between separate property interest of Glenn Tidwell and the community property interests of Debtor and Glenn Tidwell should be as follows:  reimbursable separate property contribution to the property is 48% ($138,333 divided by $66,666), and the community property appreciation is 52% ($138,333 divided by $71,667), and thus, Debtor and Glenn Tidwell each have a 26% community property interest in their one-third interest in the note.  The residual value of the note as of the petition date was $98,232.33, which is not in dispute, and thus, the value of Debtor's 26% community property interest in the one-third interest in the note is $25,540 (0.26 times $98,232.33).

(3) Pepperwood property

The Pepperwood property was originally separate property of Glenn Tidwell, and in 2002, he transferred it from him as separate property to the family trust of him and Debtor as community property.  The deed transferring the property by him to the

community is a transmutation under California Family Code, § 852(a). *Estate of Bibb,* 67 Cal.App.4th 461 (2001); 2 Hogoboom and King, *California Practice Guide: Family Law,* ¶ 8:484 at 8-192 – 8-193.  In any event, the parties do not dispute the property is community property. *Marriage of Carpenter,* 100 Cal.App.4th 424 (2002); 2 Hogoboom and King, *California Practice Guide: Family Law,* ¶ 8:448 at 8-163 – 8-164.  Thus, Glenn Tidwell is entitled to reimbursement of the value of the property at the time of the transfer as separate property, but the post-martial appreciation is apportioned between separate and community property contributions under the Moore/Marsden formula because this was the marital residence.   2 Hogoboom and King, *California Practice Guide: Family Law,* ¶ 8:295 *et seq.* at 8-113 – 8-124, *citing Marriage of Moore,* 28 Cal.3d 366 (1980) and *Marriage of Marsden,* 130 Cal.App.3d 426 (1982). When he transferred it to the trust, the fair market value of the property was $257,000, and it is now worth $900,000.  The parties do not dispute these valuation figures.  Glenn Tidwell is entitled to first $257,000 for premarital appreciation.  Then the balance of the appreciation is to be allocated under *Moore/Marsden* between contributions of separate property and community property to principal.  However, in its tentative ruling issued before the hearing, the court stated that it did not have enough information to determine the value of the parties' separate and community interests in the property because there is not enough information in the record as to what funds were used to acquire the property in light of the refinancing of the property during marriage.

At the hearing, Glenn Tidwell stated that after the transfer of the property to the family trust, he and Debtor borrowed against the property to pay for improvements of the property and other items during marriage and that the amount of refinancing debt against the property is currently $443,000, which is not disputed by Debtor.  Glenn Tidwell stated at the hearing that a maximum of $175,000 was spent from the refinancing proceeds to improve the property, including adding a second floor, but counsel for Debtor stated that Debtor asserts that $257,000 was spent from the refinancing proceeds for improvements on the property.  From the $900,000 value of

the property, Glenn Tidwell is entitled to reimbursement of his separate property contribution of $257,000, which leaves a value of $643,000. Then, subtracting the refinancing indebtedness of $443,000 against this value nets $200,000 in equity in the property to apportion between separate and community property. Taking Debtor's figure of $257,000 as the community property contribution for acquisition of the property, the apportionment should be based on the $257,000 separate property contribution of Glenn Tidwell and the $257,000 community property contribution for improvements, or an apportionment of 50% for separate property contribution of Glenn Tidwell and 50% for the community property contribution, or a 25% community property interest of Debtor in the net equity of the property, or $50,000 (25% times $200,000).

(4) Retirement account

Glenn Tidwell stated in his declaration in support of the motion that the retirement account was opened and funded 12 years before marriage and has not "significantly" added to it during marriage. Debtor did not dispute this or show that there are community property contributions to this account. The account is his separate property, and Debtor has no interest in this asset.

(5) Miscellaneous assets

Glenn Tidwell stated in his declaration in support of the motion that certain vehicles were inherited by him before marriage. Debtor did not dispute these facts. These vehicles are his separate property. Debtor has no interest in these assets.

Based on the above analysis, the value of the Debtor's interests in the assets in the martial dissolution case between Debtor and Glenn Tidwell is about $75,000, and the sale of the Debtor's interests for $125,000 is within the range of reasonableness, given the uncertainties of litigation here because further litigation of these assets would be a three-way battle between the estate, Debtor and Glenn Tidwell involving intensely factual issues of valuation and application of martial property division law in California.

The court determines that the trustee has met her burden of showing the fairness, reasonableness and adequacy of the compromise based on the above analysis considering the factors of probability of success in litigation, difficulties encountered in collection, the complexity of litigation, the expense, inconvenience and delay and paramount interest of creditors and a proper deference to their reasonable views. *In re A & C Properties,* 784 F.2d at 1381 (citations omitted). While the trustee might do better in further litigation, she is not likely to do so, and the compromise is fair, reasonable and adequate under the circumstances to realize the value of the estate's interest in Debtor's assets contested in the state court marital dissolution case, and avoids further litigation of intensely factual and complex issues of valuation of marital assets under California family law, which necessarily entails more expense, inconvenience and delay for the estate in realizing the value of its assets, which demonstrates that it is in the best interests of creditors to realize the value of the assets in the compromise and to avoid the uncertainties and expense of further litigation. Accordingly, by separate order, the court grants the trustee's motion to approve compromise.

IT IS SO ORDERED.

### 

Date: March 1, 2018

_____
Robert Kwan
United States Bankruptcy Judge